My name is Easton Clerk. Mark Fields, Attorneys for the plaintiff's side of Pelham, Mr. Fields. Dowers, Debra Dowers. Counsel, before you get very far, let me just ask you, have you read our Hullo vs. Recon Trust Company case? I have not. And it is now October 19th. No, I have not. Is it key in this case? What is the... It deals with the MDCPA. We're going to be somewhat handicapped because this is, except for one paragraph or one subpart, pretty much controls things. But we'll talk about the concepts and I'll go ahead with your presentation. If the court could perhaps explain the imputability of what that case had to this case. Are you familiar with the Fourth Circuit case in Wilson? No, Your Honor. Was it? Your Honor, this is the case. What was it referred to in the briefs? I don't recall that specific case. The cases that I would ask the court to focus on are Hulls vs. Bolling, the Rockridge Trust case cited in the brief, that say steps taken prior to a judicial or non-judicial foreclosure can be violations of the FDCPA. And we're not seeking to challenge actions that were taken in connection with an actual foreclosure proceeding. That's all the things they did beforehand. Let me, just let me write that down. The whole case makes it clear that unless the party is collecting money, it's not collecting a debt under the FDCPA. So in that case, the court was dealing with the California anti-deficiency laws. And my understanding is that Nevada has, in section 40.455 sub 3, has a similar provision that indicates that since this was a purchased money loan, there would be no possibility that any money could be collected. Your only remedy is to foreclose on the property. Is that correct? That is correct. In fact, Your Honor, there was a bankruptcy and a discharge. So they couldn't sue, for instance, on the note. If that's the case, then Hull is probably right on point. Because basically it says, you know, they're not collecting a debt then. So if they're not collecting a debt, is there any other provision of the FDCPA that it might be violating? Yes, Your Honor. And I cited cases that talk about, even after bankruptcy, even after bankruptcy, that if they threaten a foreclosure and do certain things, that would otherwise violate the FDCPA. That if they say, if you don't pay this money, you will lose your home by any stretch of the imagination, that is seeking to collect a debt. They're saying, if you don't pay, these bad people die. But that's not what Hull says. That's your problem. Hull says that's not a collection of a debt. Because unless you can collect money, you're not collecting a debt. That's what Hull says. I suppose, counsel, your main argument is that the conduct that Nation Star's representatives engaged in with your client all occurred outside of the foreclosure proceedings. Is that your argument? That is correct, Your Honor. And that conduct was egregious. The concepts are that there was a non-judicial foreclosure proceeding. Excuse me. They were denied the right to foreclose at a foreclosure mediation conference because they didn't have a possession of the note. That was in February of 2014. So there was a- I assume we're talking about Nation Star, not Wells Fargo. Well, we have quite the confusion there because at the foreclosure mediation conference, Nation Star showed up, Wells Fargo showed up, and on pages, I think it's 26, 28 of my opening brief. It's just a complete mess as to who is the holder of the note. Who engaged in these pressure tactics that you're referring to? The pressure tactics were engaged in by Nation Star. And let me just summarize that quickly because if I was going to go through everything they did that was abusive, I wouldn't be here for 15 minutes. I'd be here for about 15 hours. After the February 2014 foreclosure mediation conference where they were not given permission to foreclose, on March- So your position there is that ended the foreclosure aspect? Absolutely. From then on, it was a debt collection, is that what you're saying? Yes, absolutely. What did they do on March- so that was in February of 2014. They are not permitted to foreclose at the foreclosure mediation conference. Then they write a letter a month later basically saying if you don't pay, we're going to foreclose. And that was a direct communication from Nation Star to the clients who were represented by counsel. Counsel, I appreciate your enthusiasm, but let me just read to you from- oh, I'm sorry, you don't know about this case because it's controlling. It says, actions taken to facilitate a non-judicial foreclosure such as sending a notice of default and notice to sell are not attempts to collect a debt as that term is defined by the FDCPA. So in this case, admittedly, the mediation failed. They would have had to initiate a new collection, a new notice of default collection to sell in order to foreclose. They couldn't get any money, therefore it wasn't a debt. So what do you rely upon in the FDCPA to say that this is a violation? It's kind of a hybrid because the other one terminated. It's somewhat equivalent to if no foreclosure had ever been started in the first place that they sent a letter before they filed a notice of default collection to sell. And if you say that, then you're saying that no lender can communicate with a borrower to try to get them to pay before they initiate a foreclosure. No, that's not what I'm saying. Okay, what are you saying? First of all, let's go through the various violations. And while counsel's arguing, I'll look at the Hulse case to give the distinction because I think one of the cases I cite, there was a violation of the FDCPA after a bankruptcy was filed. So you couldn't collect on the note. So on March 25, after they can't foreclose, they make a demand on the client to pay. Then on April 2, I write a letter saying don't contact my clients because under the FDCPA you can't contact a client represented by counsel. Well, they don't care. After I tell them in writing don't contact my clients in May to June, there are three separate telephone calls to my clients. Three of them in two months. After I've written them telling them not to do it, then. And your belief is that violates the FDCPA? Yes. What do you cite in the FDCPA that would say that what you have just described is a violation? 1692AC says after a debt collector is told that they can't contact the client, that they should contact the lawyer directly, they are obligated under 1692CA not to contact the client. And they should start after how a debt collector? Yes, they were. Well, again, I will address that on my rebuttal. Let's work on the fact that there are debt collectors. Of course, there are debt collectors. So after they have three calls to my client, after they know the client is represented, I write them again, don't do it. Then in May to June, they post notices on the door. They literally go to the house in three separate locations and post notices on the door. I write them again. I say don't do it. But does the law prohibit their posting a notice on the door? It's a direct communication. No, I understand that. But I'm just saying, is that how foreclosures are commenced? No, no, no, no. That has nothing to do with the commencement of a foreclosure. Notice that the folders report started by recording with the county recorder's office. These notices say, important. Oh, I see. Okay. Then in June 18, they send a modification or a loan statement to my clients, again, directly communicating to my clients. I'm writing them again, don't do it, don't do it. I keep on saying in my letters, you keep on threatening to foreclose, but you're not allowed to foreclose unless you have the reasonable loan document, because that is what you were precluded from foreclosing because you didn't have the original note. And I'm writing them again and again. Do you have the original note? Otherwise, all your threats to foreclosures are a violation of assuming you're a debt collector, which is all I deal with on the book of war. 1692A says you can't communicate with someone who's represented by counsel correctly. They violated that. 92D says you can't harass or oppress. 92E, you can't make any false statements. 92F, you can't threaten to take actions that you have no intent to pursue. And again, each of these communications, they say they will foreclose if you don't pay, but they don't have the ability to foreclose. That is a violation of all four of those statutes. They're harassing my clients again and again and again. After they were told that my clients were represented by counsel, and I document this in the record, there are eight separate communications from February of 2014 through July, excuse me, September of 2014. Eight times they contact my clients. Three times verbally. Three times by posting notices in the door. And several times by writing to them directly. And the worst of the situations was on August 26th. They said they'd write to my client. And they said directly to my client. This is after letter after letter after letter saying don't contact my client. I think we're familiar with all of the activities they engaged in. We still need to hear from you as to whether they're a debt collector. And you're down to three and a half minutes. You may ask to reserve. I am reserving five minutes. No, I'm sorry. You're down to three and a half. Then I'll reserve. Very well. You may do so. We'll hear from the bank. Good morning, Your Honors. I think the counsel would you identify yourself for the record, please? Yes. Ariel Stern. I appear for Nature's Heart Mortgage and for Wells Fargo. Do I have it correctly? I'm sorry. I was going to say do I have it correctly that Wells Fargo was not part of these activities in terms of the calls, the allegedly harassing calls and that sort of thing? That is correct, Your Honor. The servicer here is Nature's Heart. So as a servicer, they would take all of those activities in connection with the foreclosure. And Wells Fargo is the record beneficiary of the Deed of Trust, essentially the investor on the loan. So all of the actual activity would have been Nature's Heart. And I think as framed in the argument for the appellant, the one key question, if not the key question, is whether these were debt collecting activities. I think the district court got it right and correctly anticipated the law in the circuit. Can you recall? I have, Your Honor. I am remiss that we did not do a supplemental authority. Well, we wish you had because you probably would have been able to notify opposing counsel that it's a relevant case. Yes, Your Honor. And I apologize for that. I reviewed it recently. And I believe it is, as Judge Smith said, dispositive of most, if not all, of the issues in the case, I think, as you framed the argument with the appellant's counsel. The only question here is whether these were debt collecting activities. And the district court had a very voluminous record. The complaint here was very detailed, and it included a lot of exhibits which are now in the record before you. So the district court had an ample ground on which to review these communications and determine that they were all related to foreclosure, not the attempt to collect money. Well, now, is that a question of fact or a question of law? I think, Your Honor, it is a question of law on which a 12B6 determination was proper because all of those exhibits were part of the complaint. The court did not have to go outside of that pleading. But if we read the pleading to conclude that these activities, or at least some of these activities, occurred outside of the foreclosure process and, therefore, would be amenable to the Debt Collection Act, what then? I think, Your Honor, the statement or any such statement in the complaint would be a legal judgment on the part of the plaintiff in drafting the plea. And that would not be entitled to the presumptions of truth and all of the inferences that come from that. And in addition to that, I believe what the district court expressly did was, under Trumpley and Iqbal, determine that these were not plausible claims or, in other words, not a plausible claim for a FDCPA violation because the complaint as described, or I should say the communications as described, in the complaint which did include all of the complaint of communications related to the foreclosure activity. I'm just going to counsel Judge Gould if I can interject a question. Why couldn't it be plausibly considered that the complaint is complaining that Nation Star was using the threat of foreclosure in order to collect the debt? I think that's a putting aside whether the whole case is dispositive of which we'll hear more of. But apart from that, I think that is an inference that wouldn't be plausible, Judge Gould, for two reasons. First, and I think the appellant explained this, at that point there had been a bankruptcy discharge. So there was at that point no debt to collect in the letters that are complained of and that were included as part of the record before the district court especially said that if there was a bankruptcy discharge, that the letters were not an attempt to collect the debt, but merely provided for informational purposes. That was within the record of the pleading. Secondly, but there was no discharge. Your Honor, I think there was a. . . In other words, the debt was never discharged, was it? I believe, Your Honor, that it was discharged on the 17th of January of 2014. And that's then the record before you. Unfortunately, the actual order of discharge is not before you, but the back end of the bankruptcy court is. Your Honor, at some point it was before the discharge, which is really not in this case. At some point there was a debt. There was a note owing. Correct. The mediation that occurred on this case occurred on, I forget the exact date, in February of 2014, and that is it was after that mediation that the appellant's claim that they no longer had the right to foreclose, and that's really the predicate for a lot of the claims that derive from that. That ended the foreclosure proceedings, didn't it? Technically. That's the number in this case. His claim is that the foreclosure was over at that point, yet the Nation Star continued to allegedly harass his client and ask for a debt. Yes, that's I think. . . I think he put it a little differently. I think he said that at that point it was determined that Nation Star did not have the right to foreclose, which is not accurate because the mediation simply determined, the mediator simply determined that there was a noncompliance with the document production requirements, which is not the same as saying that there's no right to foreclose or that there's any kind of preclusive finding that documents are missing, that Nation Star doesn't have the original documents. The original documents aren't even necessary, even under the Nevada Mediation Statute. So I think the right to foreclose was not determined one way or the other in the mediation, other than for purposes of that mediation itself. There was nothing precluding Nation Star from recording a new notice of default and starting over. But it never did start over, did it? It did not start over, but I think, and I think this answers, this is the second part of my answer to Judge Boole's question as well, the communication that came after that, after that mediation, was related primarily, and we would argue exclusively, and the district court found, I think, this, to foreclosure. The explanation that the consequence of not paying the debt will result in a foreclosure is merely a provision of information. It's not an attempt to get money. Now, obviously, the... As I recall, what it boils down to is if you don't pay now, we'll foreclose. Isn't that what, essentially, this is all about? That's essentially what it says, Your Honor. I do agree with that, but I don't think, and this goes into what Judge Boole was asking, I don't think that makes it a plausible collection attempt. Coming back to the chronology of this, the bankruptcy discharge occurred in January, so it occurred even before that February mediation. So at that mediation, there was no debt that had been discharged. Really, we were there, or I wasn't there. They were there to enforce, to keep the trust clean. In addition to that, the letter does not have any of the typical indicia. It says of an attempt to collect a debt, it wasn't its primary purpose. It basically says we're going to foreclose. This is how much is owed on this lien. This is where you need to pay it, and these are some of the options that you have to avoid foreclosure, and it sets forth some loss mitigation and home retention information. That is all there in connection with the foreclosure. If it's not for the foreclosure, if it's not for the end result at the end of this process, which is a nonjudicial sale, that letter wouldn't have come out. Let me ask you this, counsel. I'd like to go off the debt foreclosure for a minute. There is another provision in the FDCPA that may cover this, and the EFO bars the other portion of it, and that is 15 U.S.C. section 1692F6A. That provides that the FDCPA applies in part to an entity whose principal business purpose is, in quotes, the enforcement of security interests. That would clearly cover NationStar, would it not? I think you're on it. Is that what NationStar does, foreclose? NationStar is a servicer, Your Honor, so one of the things it does is foreclose, but it's not the principal. So that would be a question of fact, but if it is and that's one of its purposes, then arguably the FDCPA would to some degree apply in that situation. I don't know whether all of these are alleged to apply, but perhaps that's something that you could comment on. If you're familiar with this subsection, do you know what I'm talking about? Yes, Your Honor, and I think I have two responses to that. First of all, I do believe that in the complaint, including all of the exhibits, it's apparent that NationStar is a servicer, and that servicer performs services on behalf of Wells Fargo, the investors that go beyond simply collecting the debt. It forecloses. The deed of trust is in the record, and under the deed of trust there's many things that the lender, as it's defined in the deed of trust, does, including preservation of the property, assuring that insurance is on the property, all sorts of things at all. Okay, so it's not the principle. Okay, well, let's just say, for our purposes, that it's in the business of the enforcement of security interests. Would the allegations of the plaintiffs here about contacting clients without going through the lawyer and so on be a violation of the FDCPA? I don't think so, Your Honor, because even then, if you assume that NationStar falls into the definition of a debt collector, the practice, the activity that is alleged, still has to be debt-collecting activity. Well, I'm not sure that's right. I guess that's the question, and what does the statute mean in connection with the activities of people whose business is the enforcement of security interests? Clearly, with respect to debt collectors, you're right, but the question is how much does the act apply to people who have this other more limited function? I understand that, Judge, and I think the response is twofold. First, in the manner that the complaint was framed, as I understand it at least, and I don't think there's been anything said today that would contradict this, this is alleged as a debt-collection violation, not as a violation of, let me rephrase that, I don't think there's been an allege that NationStar was a debt collector or was engaging in regulated activity because of its enforcement of security interests. I understand what you're saying is because the complaint alleged a debt-collection violation and since FOA may bar that, you'd have to send it back. You'll have to have the district court amend the complaint to allege this under. Are you saying they're just done because they didn't allege this? I'm saying the second part, Your Honor, they're done because there was a waiver that they could have alleged that. I don't think there's anything that precluded that, and that's simply not the way the complaint was addressed. It wasn't how it was framed, and the plaintiff is the master of its own plaintiff. It's not spelled out in the briefing, but that would be a waiver issue. So, in other words, the statute always contained this. They didn't allege it. They're proper. That would be our position, Your Honor. We think that's a preferable outcome than amending to send, excuse me, remanding for the district court to consider a claim that was never made. So, I think. What about remanding? What about remanding on the point of interest, Judge Smith, there, for the district court to consider whether amendment is proper? I think, Judge, the district court, even though its order did not address amendment, implicitly found that amendment was not proper, and I think it found that correctly because in its motion, excuse me, in their opposition to our motion to dismiss, there was a conclusory paragraph at the very end that suggested amendment, but the grounds that were given for amendment was additional facts consistent with what the plaintiffs have colorfully described as the volume of harassment campaign. In other words, there wouldn't be any type of factual allegation made that would bring the alleged activity outside of debt collection, excuse me, outside of foreclosure and into debt collection. And so. Is the complaint that was tossed out, is that the first complaint? Yes, Your Honor. So, we understand that there was a request to amend, and we believe that the district court correctly denied that because even though it didn't say it was in its order, it would have been futile to amend. And, again, the reason for that is because the plaintiff didn't say what they would say other than more of the same types of facts that led the complaint to be dismissed in the first place. I think, Counselor, your time has expired. I see that. Counselor, you have some reserved time. Thank you. I found what I was looking for. In my reply brief, at pages 6 through 8, I have a very long quote from the Abraham case. And on page 8, for instance, I'll just read it very quickly. It says the Third Circuit embraces a broad definition of debt collectors in some cases. The CAC alleges that Plaintiff Abraham fell behind on a mortgage, filed a bankruptcy petition, entered into a loan modification, and then there were various things were done wrong. So, even if there's a bankruptcy where the debt's been discharged, if you basically are saying if you don't pay it, who will then enforce the security interest? Can you read the quote? The quote over here? I got it. Okay. Who is in our case? Abraham is the Third Circuit. Wonderful Circuit. They don't control our case. We have a controlling case now. So, unfortunately, always what we're dealing with. Do you have any comment on the question I raised with opposing counsel about whether a cause of action under 1692F6A remains even if O knocks out your debt collection claim based on the idea that Nation Star is involved in the enforcement of security interest? Do you have any comment on that? I would believe it would, Your Honor. And not just that. I have a cause of action for intentional infliction of emotional distress. Whether or not they are subject to FDCPA. Counsel, with all respect, I know that you feel strongly about this, but you suggested that the things that you indicated were extreme and outrageous under Alderer v. Lowe in Nevada law. That's abstraction. I don't think so. I think you have it. You have a polite institution that, over six months, lied repeatedly. They said in August 26, they had possession of the note. We can take your home away. They couldn't. These people moved out of state because they were subject to a six-month campaign where they were repeatedly contacted. You think they have a lawyer to protect you? Too bad. We'll just ignore the statute and we'll contact you directly. We will lie about our ability to foreclose. They know they couldn't foreclose. They didn't have the note. They needed the note to foreclose, and they lied. They said they hadn't. And I've asked them again and again and again to confirm that state, and they just don't know. And this is not a case where someone was killed, but in a financial case, they were driven from their home, they were driven from the state. And Wells Fargo is liable for the actions of its servicer. I studied the case of Countrywide and Courtier in my briefs that a servicer, the sins of the servicer are visited upon the pencil. So we have a case where I caught a lying harassment campaign. That's not hyperbole. That's an understatement. They spent six months lying, ignoring the fact that they had counsel, and threatening to do things, which they knew they couldn't do. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: O'scannlain, Gould, M. Smith